IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELEKE VONDRAKE DAVIS,     Plaintiff | : : : | |
| | : | No. 1:22-cv-02074 |
| v. | : : | (Judge Kane) |
| DHO – B. CHAMBERS and LIEUTENANT SCAMPON,     Defendants | : : : | |

**MEMORANDUM**

Pro se Plaintiff Eleke Vondrake Davis ("Plaintiff"), a federal prisoner who is currently incarcerated at United States Penitentiary Florence–Administrative Maximum in Florence, Colorado, has commenced the above-captioned action by filing a complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens") and 18 U.S.C. § 4042. In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.

**I.     BACKGROUND**

On December 30, 2022, Plaintiff filed his complaint against the following two (2) individuals, both of whom appear to be employed by the United States Bureau of Prisons ("BOP") and work at Untied States Penitentiary Lewisburg in Lewisburg, Pennsylvania ("USP Lewisburg"): B. Chambers ("Chambers"), a disciplinary hearing officer; and Lieutenant Scampon, a senior correctional officer ("Scampon") (collectively, "Defendants"). (Doc. No. 1 at 1, 2-3.) On that same date, Plaintiff also paid the requisite filing fee in this matter.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

In his complaint, Plaintiff alleges that the events giving rise to his claims occurred on April 10, 2017, September 21, 2022, and October 5, 2022, at USP Lewisburg.  (Id. at 4.)  Specifically, Plaintiff alleges that, on April 10, 2017, at approximately 11:00 a.m., he was escorted to a disciplinary hearing.  (Id.)  Plaintiff alleges that, before the hearing commenced, he asked for his staff representative, correctional officer Ms. Nickles, and his witnesses.  (Id.)  Plaintiff alleges that he was told staff can refuse to appear and that they are not obligated to represent him.  (Id.)  Plaintiff alleges that he proceeded by "[protesting his] widely known sexual preference – LGBTQ[,]" as well as "window partitions" that inhibit view of "nether regions/lower extremities."  (Id. (setting forth allegations to suggest that Defendant Scampon had stopped at Plaintiff's cell door and ordered Plaintiff "to stop that!" but that Defendant Scampon was "mistaken[ ]").[2]  Plaintiff alleges that, despite his protestations, Defendant Chambers found him guilty of Prohibited Act Code: 205 – Engaging in Sexual Acts."  (Id.)  As a result, Plaintiff alleges that he was sanctioned as follows: disallowance of twenty-seven (27) days good conduct time; thirty (30) days disciplinary segregation; and one-hundred and twenty (120) days loss of privileges.  (Id.)

Based upon these allegations, Plaintiff claims that Defendants violated his rights under the Fifth Amendment to the United States Constitution pursuant to Bivens.[3]  (Id. at 5.)  Plaintiff

---

[2] Plaintiff does not elaborate on what Defendant Scampon allegedly believed Plaintiff was doing in his cell.  (Doc. No. 1 at 4.)  Based upon the asserted fact that Plaintiff was ultimately found guilty of engaging in sex acts, the Court surmises that Defendant Scampon may have believed that Plaintiff was engaging in such acts.

[3] While Plaintiff asserts a claim under the Fourteenth Amendment to the United States Constitution (Doc. No. 1 at 5), that amendment is applicable to state officials; it does not apply to federal officials.  See U.S. Const. amend. 14, § 1.  Thus, the Court construes Plaintiff's due process claim as one brought under the Fifth Amendment to the United States Constitution, which is applicable to federal officials.  See U.S. Const. amend. V.

also claims that Defendants violated 18 U.S.C. § 4042. (Id. at 6.) For relief, Plaintiff seeks compensatory damages and costs of this action. (Id.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

4

III.    DISCUSSION

    A.    **Bivens**

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983." See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854 (2017) ("Abassi"). This statute "entitles an injured person to money damages if a state official violates his or her constitutional rights." See id. Congress, however, "did not create an analogous statute for federal officials." See id. In other words, Congress did not provide a money damages remedy for persons whose constitutional rights were violated by federal officials. See id.

One-hundred years later in 1971, the United States Supreme Court decided Bivens. See id. In that case, the Supreme Court held that there is an implied cause of action for money damages when a federal official, "acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." See Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Bivens, 403 U.S. at 389, 397)). The Supreme Court recognized that "the Fourth Amendment does not in so many words" provide for an award of money damages as a consequence of its violation, but nevertheless explained that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." See Bivens, 403 U.S. at 396 (citation and internal quotation marks omitted).

In the decade following Bivens, the Supreme Court implied a cause of action for money damages pursuant to Bivens in two (2) other contexts: one under the Fifth Amendment's due process clause for gender discrimination in the employment context, see Davis v. Passman, 442 U.S. 228, 248-49 (1979); and the other under the Eighth Amendment's prohibition of Cruel and

Unusual Punishment Clause in the prison medical care context, see Carlson v. Green, 446 U.S. 14, 23-25 (1980). See Bistrian v. Levi, 912 F.3d 79, 89 (3d Cir. 2018); Shorter, 12 F.4th at 371.

In 2017, however, the United States Supreme Court "made clear" in Abbasi that any further expansion of Bivens "is now a disfavored judicial activity." See 137 S.Ct. at 1857 (citation and internal quotation marks omitted); Hernandez v. Mesa, 140 S.Ct. 735, 741 (2020) (explaining that, after the Supreme Court's decisions in Davis and Carlson, "the Court changed course"); Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand Bivens actions beyond these three specific contexts"—i.e., Bivens, Davis, and Carlson).

Thus, in order to curb the expansion of Bivens, the Supreme Court has established a rigorous two (2)-part inquiry for courts to follow when determining whether a Bivens action should be extended to a new context. See Bistrian, 912 F.3d at 89-90 (citing Abbassi, 137 S.Ct. at 1859-60); Shorter, 12 F.4th at 372. More specifically, courts must first determine "whether a case presents a new Bivens context" by asking "[i]f the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court[.]" See Ziglar, 137 S.Ct. at 1859. "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Shorter, 12 F.4th at 372 (citation omitted).

If, however, a case presents a new Bivens context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine. See id. (quoting Abbasi, 137 S.Ct. at 1857-58). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." Bistrian, 912 F.3d at 90 (citing Abbasi, 137 S.Ct. at 1857-58). Other factors include:

> the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

See id. (quoting Abbasi, 137 S.Ct. at 1856-63).

More recently, on June 8, 2022, the Supreme Court decided Egbert v. Boule, 142 S. Ct. 1793 (2022). In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new Bivens context. In particular, the Supreme Court recognized its precedents that describe the two (2)-part inquiry, but explained that these two (2) parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." See id. at 1803. The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." See id. (citation and internal quotation marks omitted)). Thus, the outcome of Egbert is—essentially—that extending a Bivens remedy to a new context will be unavailable in all but the most unusual of cases. See id. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no Bivens action may lie").

Here, Plaintiff asserts a Bivens claim based upon allegations that his due process rights were violated under the Fifth Amendment to the United States Constitution in connection with his disciplinary hearing on April 10, 2017. (Doc. No. 1 at 4-6.) Although the Supreme Court has recognized a Bivens action for gender discrimination in violation of the Fifth Amendment, see Davis, 442 U.S. at 230, the Court finds that Plaintiff's claim presents a new Bivens context. See, e.g., Bistrain, 912 F.3d at 94-95 (concluding that the plaintiff's Fifth Amendment due

7

process claim based upon his punitive detention in the special housing unit represented a new <u>Bivens</u> context).

Thus, because Plaintiff's Fifth Amendment due process claim presents a new context, the Court must determine under <u>Abbasi</u> and <u>Egbert</u> whether there are any special factors that counsel hesitation in expanding <u>Bivens</u> to this claim. See <u>Mack</u>, 968 F.3d at 317. Ultimately, the Court finds that there are factors that counsel such hesitation here. See <u>Egbert</u>, 142 S.Ct. at 1803 (explaining that such a factor or reason indicates that Congress is better equipped than the Judiciary to "'weigh the costs and benefits of allowing a damages action to proceed'" (quoting <u>Ziglar</u>, 137 S.Ct. at 1858)).

More specifically, the Court finds that extending a <u>Bivens</u> remedy to Plaintiff's Fifth Amendment due process claim "would unduly encroach on the executive's domain" and violate "serious separation of powers concerns[.]" See <u>Bistrian</u>, 912 F.3d at 95. Indeed, Plaintiff's due process claim calls into question the decision-making of prison officials concerning the manner and method of prison disciplinary proceedings, as well as the extent of the discipline imposed against prisoners subsequent to such proceedings. Deference is, therefore, appropriately afforded to prison officials with respect to such decision-making. See <u>Turner v. Safley</u>, 482 U.S. 78, 84-85 (1987) (recognizing that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint" (internal citation and internal quotation marks omitted)).

Additionally, "[b]esides those serious separation of powers concerns, recognizing a Bivens remedy [here] would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such claims." See Bistrian, 912 F.3d at 95. "Heeding the reasoning in Abbasi, [courts] must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" See id. (quoting Abbasi, 137 S.Ct. at 1858).

Thus, the Court concludes that Plaintiff's Fifth Amendment due process claim arises in a new Bivens context and that there are sound reasons to find that Congress is better equipped than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed." See Egbert, 142 S.Ct. at 1803 (citation and internal quotation marks omitted). Accordingly, because there are such reasons to defer to Congress here, the Court will refrain from creating a Bivens remedy for Plaintiff's claim. See id. (instructing that "even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy" (citation and internal quotation marks omitted)). Therefore, the Court will dismiss Plaintiff's Fifth Amendment due process claim with prejudice for failure to state a claim.

B.   18 U.S.C. § 4042

Plaintiff claims that Defendants violated 18 U.S.C. § 4042, which provides, in pertinent part, that the duties of the BOP include "provid[ing] suitable quarters and . . . the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]" See id. § 4042(a)(2); (Doc. No. 1 (citing this particular provision of 18 U.S.C. § 4042)). The United States Court of Appeals for the Third Circuit has already ruled that this statute does not confer upon a federal prisoner any express or implied cause of action. See Chinchello v. Fenton, 805 F.2d 126, 134 (3d Cir. 1986). Thus, any claim based upon alleged

9

violations of 18 U.S.C. § 4042 are without merit and will be dismissed with prejudice for failure to state a claim upon which relief can be granted. See Natale v. United States, No. 13-cv-02339, 2014 WL 1281224, at *11 (E.D. Pa. Mar. 28, 2014) (dismissing with prejudice Plaintiff's claim brought under 18 U.S.C. § 4042 since that statute does not create a private right of action against prison officials (citing Chinchello, 805 F.2d at 134)).

### C.    Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend his complaint would be futile because any amendment filed could not cure the legal deficiencies

discussed above. Accordingly, the Court will dismiss Plaintiff's claims, brought pursuant to Bivens and 18 U.S.C. § 4042, without leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's complaint without leave to amend. An appropriate Order follows.